UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00053-JAW |
| | ) | |
| KEVIN EARL SPRING | ) | |

**ORDER ON MOTION *IN LIMINE***

The Court grants the Government's motion *in limine* and allows the Government to present evidence in the upcoming bench trial as to the circumstances surrounding the Defendant's alleged commitment to a mental institution within a month of his alleged attempt to purchase a firearm from a federally-licensed dealer.

## I. STATEMENT OF FACTS

### A. Procedural Background

On April 13, 2011, a federal grand jury indicted Kevin Earl Spring for making a false statement in his acquisition of a firearm, an alleged violation of 18 U.S.C. § 922(a)(6), *Indictment* (Docket # 38), and on May 18, 2011, a grand jury issued a superseding indictment, adding two counts: 1) making a false statement during the purchase of a firearm, an alleged violation of 18 U.S.C. § 924(a)(1)(A) and 2) possession of a firearm after having been committed to a mental institution, an alleged violation of 18 U.S.C. § 922(g)(4), *Superseding Indictment* (Docket # 57). After the Court resolved a number of pretrial motions, Mr. Spring appeared before the Court on October 26, 2011 and waived his right to a jury trial. *Waiver of Trial*

*by Jury* (Docket # 113). That same day, the Court scheduled a trial—jury waived—to begin on Tuesday, November 29, 2011. *Notice of Hr'g* (Docket # 112). On Wednesday, November 23, 2011, the Government filed a motion *in limine*. *Mot.* in Limine *of the United States of Am.* (Docket # 123) (*Gov't's Mot.*). Mr. Spring was able to respond the same day. *Def.'s Resp. to Gov't Mot.* in Limine (Docket # 125) (*Def.'s Opp'n*).

### B.    The Government's Proffer

The Government says that at trial it intends to present evidence that on December 29, 2010, Knox County Sheriff's Deputy John Hansen went to Mr. Spring's home and that Mr. Spring surrendered a loaded shotgun to him, after saying that people were using a "secret door" to enter his basement and steal copper pipe from him. *Gov't's Mot.* at 1. Deputy Hansen searched Mr. Spring's home and found no evidence of any such theft. *Id.* at 1-2. Crisis Clinician Patricia Peek and Dr. James A. Curtis sought authority to place Mr. Spring involuntarily within the custody of the Psychiatric and Addiction Recovery Center (PARC) Unit of Pen Bay Medical Center (PBMC) because his "delusional behavior, protecting home from intruders with shotgun" caused a substantial risk of harm to others. *Id.* at 2. They will add that Mr. Spring "received explanations regarding his involuntary status and refused to voluntarily admit himself." *Id.*

Furthermore, Charles Cabaniss, a federally-licensed firearms dealer, recalled that Mr. Spring visited his Vassalboro, Maine gun shop on January 27, 2011 and expressed a desire to purchase firearms for his protection because people were after

him and were seeking to remove copper pipe from his home.  *Id.*  According to the Government's Trial Brief, Mr. Cabaniss thought Mr. Spring was suffering from a mental illness and therefore asked him whether he had been involuntarily committed to a mental institution and suggested that a question on ATF Form 4473 might apply to him.  *Gov't's Trial Br.* at 3 (Docket # 107).

Finally, again according to the Government's Trial Brief, on January 27, 2011, Mr. Spring went to a second federally-licensed firearms dealer, Willey's Sports Center in Ellsworth, Maine, briefly handled a Glock 9 mm semi-automatic handgun, paid $450 for the firearm, and completed an ATF Form 4473.  *Id.* at 3-4. The Government says that Mr. Spring falsely represented on the ATF Form 4473 that he had never been committed to a mental institution.  *Id.*

### C.     The Government's Position

In its motion *in limine*, the Government seeks to admit the circumstances surrounding Mr. Spring's December 29, 2010 admission to PBMC.  It maintains that the evidence of his surrender of the shotgun and involuntary transport to PBMC is admissible because it is "necessary to establish the defendant's knowledge that he was involuntarily placed in the custody of the PARC Unit" of PBMC and to "show the context of the contested charges and in order to provide background evidence and a complete picture of his conduct."  *Gov't's Mot.* at 2.  It says that this evidence is "inextricably intertwined with the crimes charged and is necessary to provide coherence to the case."  *Id.* at 3.  Finally, the Government contends that "[e]vidence of the events which preceded the involuntary commitment of the

3

defendant is a step in a series of events that show the defendant knowingly made a false statement on the Firearm Transaction Record." *Id.* at 4. More specifically, the Government asserts that this evidence is "highly relevant to his motive, intent, knowledge and state of mind." *Id.* at 7. The Government discounts any prejudice from this evidence. It notes that the Court is holding a bench trial and will not improperly use the evidence of the events leading up to his commitment at PBMC to infer that he is a bad person or that he made the false statement the Government alleges. *Id.*

The Government also seeks to exclude Mr. Spring's "justification" defense. *Id.* at 8. It says that even though Mr. Spring's momentary possession of the Glock at Willey's Sports Center fits within the legal definition of possession, Mr. Spring is going to argue that his momentary possession was justified because he needed the firearm to defend himself. *Id.* The Government claims the justification defense does not fit these facts. *Id.*

### D. Kevin Spring's Opposition

Regarding evidence that he told others that people were stealing copper pipe and he needed firearms to protect himself, Mr. Spring concedes "that his own statements will probably be admissible at trial." *Def.'s Opp'n* at 1. However, Mr. Spring is concerned about the Government's proposal to go further and present evidence of the deputy sheriff's investigation of his home. *Id.* Noting that this information was not conveyed to his treatment providers, Mr. Spring says this evidence would be "irrelevant and unfairly prejudicial." *Id.* Rather than rule in

advance, Mr. Spring urges the Court to hold its rulings in abeyance and to resolve these evidentiary issues at trial. *Id.*

Mr. Spring is also concerned that the Government appears to be attempting to conduct a "full-scale commitment hearing" on the theory that this background is "necessary evidence in determining whether the procedural safeguards afforded him after that hospitalization were sufficient." *Id.* at 2. Mr. Spring says the Government is taking the "quaint notion" that a full commitment hearing is necessary to demonstrate whether adequate due process rights were afforded Mr. Spring before divesting him of his Second Amendment right to bear arms. *Id.* Mr. Spring disagrees, stating that testimony regarding the absence of such a due process hearing in Maine is sufficient. *Id.*

Finally, as regards the justification defense, Mr. Spring asks that the Court strike that section of the Government's motion *in limine* because the argument is unrelated to the motion and is premature. *Id.* at 1-2.

## II. DISCUSSION

### A. Evidence of Events Leading Up to January 27, 2011

In Count I, Mr. Spring is charged with violating 18 U.S.C. § 922(a)(6), making a false statement in connection with acquisition of a firearm when he "represented that he had not been committed to a mental institution, when in truth and fact, as the Defendant then well knew, he had been committed to a mental institution." *Superseding Indictment* at 1. To prove this crime, the Government must establish, among other things, that Mr. Spring "knowingly made a false

5

statement as charged in the indictment." Judge D. Brock Hornby's 2011 Revisions to Pattern Criminal Jury Instructions for the Dist. Cts. § 4.18.922(a) (updated Oct. 14, 2011) (Hornby Instructions); *United States v. Edgerton*, 510 F.3d 54, 57 (1st Cir. 2007). Although the Government does not have to prove that Mr. Spring "'knowingly' violated the law," *United States v. Currier*, 621 F.2d 7, 10 (1st Cir. 1980), it must demonstrate that when he made the statement, he knew it was false or that he "demonstrate[d] a reckless disregard for the truth and [had] a conscious purpose to avoid learning the truth, and [was] not acting merely by ignorance, accident or mistake," Hornby Instructions § 4.18.922(g). *See also United States v. Wright*, 537 F.2d 1144, 1145 (1st Cir. 1976).

The Court agrees with the Government that its proffered evidence is relevant to this element of proof.[1] FED. R. EVID. 401. The circumstances surrounding Mr. Spring's December 29, 2010 transportation to PBMC and his involuntary admission to its PARC Unit, if proved, would tend to demonstrate that Mr. Spring actually knew or recklessly failed to ascertain that he had been committed to a mental institution. Similarly, evidence that, contrary to Mr. Spring's fears, law enforcement officers were unable to discover a secret door or copper thefts tends to prove this same state of knowledge. For example, if law enforcement had established that neighborhood youths had entered Mr. Spring's Maine home and had removed copper piping, Mr. Spring would be in a better position to contend that

---

[1] The other two counts—alleged violations of § 924(a)(1)(A) and § 922(g)(4)—have separate *mens rea* requirements. *See* Hornby Instructions § 4.18.922(g); *Order on Mots. to Dismiss* at 16-17 (Docket # 95) (discussing the different knowledge elements in § 922(a)(6) and § 924(a)(1)(A)). However, the differences among these three statutes do not affect the Court's admissibility analysis.

6

he was not properly committed to a mental institution and that he reasonably thought he should be able to obtain a firearm to protect his property. The fact that law enforcement was not able to confirm his fears is some evidence that he knew or acted recklessly in failing to ascertain the correct answer to the ATF Form 4473 question.

At the same time, the Court accepts Mr. Spring's contention that the Court should not improperly use this evidence as character evidence under Federal Rule of Evidence 404(b) to prove conduct in conformity with his character. FED. R. EVID. 404(b). The Court will not do so. Also, the Court will not accept this evidence as bearing on the scope of whatever due process Mr. Spring received or should have received before his alleged commitment to PARC. Finally, the Court agrees with Mr. Spring that the trial of this case is not a competency hearing and that the extent of this evidence should be limited. Preliminarily, the Court rules that the proffered evidence is admissible.

### B. Justification

The Court agrees with Mr. Spring that any ruling on the viability of his justification defense, if pressed, is premature.

## III. CONCLUSION

The Court GRANTS the Government's Motion *in Limine* (Docket # 123). Evidence of the circumstances surrounding Mr. Spring's involuntary commitment, including the law enforcement investigation into his fears of copper piping thefts, is

admissible to tend to prove the state of his knowledge on January 27, 2011. The Court defers ruling on the viability of Mr. Spring's justification defense until trial.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 28th day of November, 2011